UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
MISHKA PUSEY,

              Plaintiff,

   -against-

BANK OF AMERICA, N.A.,

              Defendant.
------------------------------------------------x

**MEMORANDUM AND ORDER**
14-CV-04979 (FB) (LB)

*Appearances:*
*For the Plaintiff:*
STEPHEN KNIGHTS, ESQ.
SHELLON WASHINGTON, ESQ.
Stephen Knights P.C.
2009 Nostrand Avenue
Brooklyn, NY 11210

*For the Defendants:*
CAROLINE F. TURCOTTE, ESQ.
SIOBHAN M. SWEENEY, ESQ.
Locke Lord LLP
111 Huntington Avenue
Boston, MA 02199

**BLOCK, Senior District Judge:**

      Plaintiff Mishka Pusey ("Pusey") brings this suit against Defendant Bank of America, N.A. (the "Bank"), alleging that the Bank made false information about her available to prospective employers that has interfered with her ability to obtain employment. In her Amended Complaint, Pusey asserts state law claims for defamation, tortious interference with prospective business relations and negligence. Pusey also seeks a permanent injunction. The Bank now moves to dismiss the Amended Complaint under Rule 12(b)(6). For the reasons that follow, the Bank's motion is granted in part and denied in part.

# I.

**A.** **First Complaint**

On June 24, 2014, Pusey – a former employee of the Bank – commenced this action in New York Supreme Court, Kings County against both the Bank and an unidentified "Banking Center Manager." Pusey's original pleading (the "First Complaint") – which can only charitably be referred to as a complaint – did not articulate a specific claim. While Pusey is represented by counsel, the Court will nevertheless interpret the factual allegations in the First Complaint generously. *See Rodriguez v. Atria Sr. Living Grp., Inc.*, 887 F. Supp. 2d 503, 509 n.2 (S.D.N.Y. 2012) ("[The plaintiff] is represented by counsel and therefore is not owed the special solicitude afforded to *pro se* plaintiffs in this Circuit, but the Court will nevertheless, and with great reluctance, read his Complaint charitably.") (quotations omitted).

The First Complaint included the following inartfully plead allegations. On August 13, 2013, an unidentified "Banking Center Manager" terminated Pusey's employment. Under the nomenclature of "[a] First Cause of Action," Pusey alleges that – "upon her termination" – the unidentified "Banking Center Manager" marked her internal file with a "not-hirable" notation. Compl. ¶¶ 12, 15. The "not-hirable" notation has "created an obstacle" to Pusey's ability to find new employment and constitutes an unlawful "Restraint of Trade." *Id.* at ¶¶ 12-13.

In her "Second Cause of Action" and "Third Cause of Action," Pusey asserts that "while [she] was completing [] job application[s]" for positions with TD Bank, N.A. ("TD Bank") and Lowe's, respectively, "upon inserting her name the system replaced it with 'Risk Management.'" *Id.* at ¶¶ 18, 21. Reading these allegations charitably, Pusey is presumably claiming that the Bank disseminated information to both TD Bank and Lowe's that caused her to be classified as "Risk Management" on those companies' job application systems, interfering with her ability to obtain employment.

For her "Fourth Cause of Action," Pusey maintains that the "not-hirable" notation precluded her from obtaining a job with J.P. Morgan Chase Bank, N.A. ("Chase Bank"). Pusey specifically alleges that she had "a successful interview" for a position with Chase Bank until the interviewer asked whether the Bank would consider rehiring her. *Id.* at ¶ 25. Thereupon, Pusey voluntarily disclosed the "not-hirable" notation to the interviewer, who told her that she would be reconsidered for the position upon the notation's removal.

**B.    Amended Complaint**

The Bank removed this case on August 21, 2014 based on diversity.[1] On November 11, 2014, Pusey was granted leave to file an Amended Complaint that

---

[1] The case was originally assigned to Judge Glasser and was transferred to this Court after the parties' 12(b)(6) motion papers were fully briefed and filed.

added the following allegations.² On her termination, Andre Mack ("Mack") – the previously unidentified "Banking Center Manager" – told Pusey that, in addition to marking her as "not-hirable" in her internal file, he also designated her as "Risk Management" on the software the Bank uses to "review . . . job application[s]." Am. Compl. ¶¶ 14, 19. Mack explained that the "Risk Management" classification will prevent Pusey from being rehired by the Bank and its subsidiaries. The "not-hirable" notation and "Risk Management" designation are allegedly both false statements.

Other companies utilize the same software as the Bank to review job applications, and some information about job applicants is shared online by all companies who use the software. Beginning in December 2013, Pusey started completing online job applications.³ When Pusey filed those applications, the false "not-hirable" notation and "Risk Management" designation were "published and shared" via the software with "all [the] companies" to which she applied. *Id.* at ¶¶ 21-22. After Pusey discovered that this information was "accessible and viewable" on the shared software, she asked the Bank to remove it. Her requests were ignored.

---

² The Amended Complaint also added two defendants whose joinder destroyed diversity jurisdiction. Accordingly, at a June 23, 2015 status conference, the Court vacated the order allowing Pusey to add them as defendants. Pusey then decided to not further pursue them as defendants, thus preserving the Court's subject-matter jurisdiction.

³ The complaint is deemed amended to incorporate all allegations of fact in Pusey's opposition brief. *See* FED. R. CIV. P. 15(a)(2); *see also Chemical Bank v. Bright Star Holding, Inc.*, No. 89-CV-0609, 1995 WL 447792, at *4 (S.D.N.Y. June 8, 1995) ("In order to avoid the academic exercise of requiring [Plaintiff] to amend its complaint to allege the assertion made in its memorandum, we will deem the complaint amended so to allege.").

On these allegations, Pusey asserts claims for defamation, tortious interference with prospective business relations and negligence. Pusey also seeks a permanent injunction that would (1) require the Bank to remove the "not-hirable" notation from her file, and (2) restrain the Bank from classifying her as "Risk Management" on the shared job application software.

## II.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss, the Court "take[s] the factual allegations of the complaint to be true and draw[s] all reasonable inferences in the plaintiff's favor." *Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014).

**A.     Defamation Claim**

The Bank does not challenge the sufficiency of the allegations underlying Pusey's defamation claim. Rather, the Bank contends that her defamation claim is barred by the applicable one-year statute of limitations for such claims. *See* N.Y. C.P.L.R. § 215(3). "Because the statute of limitations is an affirmative defense, the defendant bears the burden of establishing by prima facie proof that the limitations period has expired since the plaintiff's claim accrued." *Overall v. Estate of Klotz,* 52 F.3d 398, 403 (2d Cir. 1995).

As a general rule, "[a] statute of limitations analysis is [] riddled with questions

of fact which *the Defendants* must establish in order to bar Plaintiffs' claims." *Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 354 (D. Vt. 2010) (emphasis in original); *see also Bild v. Konig*, No. 09-CV-5576, 2011 WL 666259, at *3 (E.D.N.Y. Feb. 14, 2011) ("The determination of when a statute of limitations began to run is generally a factual one."). Accordingly, "a motion to dismiss is often not the appropriate stage to raise affirmative defenses like the statute of limitations." *Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010).

New York uses "a single publication rule in determining when the statute of limitations begins to run on a defamation claim." *Van Buskirk v. The New York Times Co.*, 325 F.3d 87, 89 (2d Cir. 2003). Under that rule, "a defamation claim accrues on the date that the allegedly defamatory statement was first published." *Berry v. Vill. of Millbrook*, No. 09-CV-4243, 2010 WL 3932289, at *6 (S.D.N.Y. Sept. 29, 2010) (citing *Firth v. State*, 775 N.Y.2d 69, 369, 775 N.Y.S.2d 69, 775 N.E.2d 463 (2002)). Publication, in turn, transpires when "a libelous writing . . . is read by a person other than the author and the one defamed." *Barber v. Daly*, 185 A.D.2d 567, 568, 586 N.Y.S.2d 398 (3d Dep't 1992).

The Bank maintains that the false "not-hirable" notation and "Risk Management" designation were first published on August 13, 2013, the date Mack terminated Pusey's employment and placed those classifications on the Bank's job application review software. Under this analysis, Pusey's defamation claim – which was not filed until

6

November 11, 2014 – would be time-barred. However, Pusey asserts that the false classifications were not read by a third-party – and therefore not published – until she filed job applications online in December 2013. Under this reasoning, Pusey's defamation claim would be timely. Accordingly, reading the allegations in the Amended Complaint in the light most favorable to Pusey, there is a factual question regarding the date on which her defamation claim accrued that precludes the dismissal of that claim on statute of limitations grounds under Rule 12(b)(6). *See Ello v. Singh*, 531 F. Supp. 2d 552, 568 (S.D.N.Y. 2007) ("Dismissal for failure to state a claim based on a statute of limitations is appropriate only if a complaint shows *clearly* than a claim is not timely.") (emphasis added).

In any event, even if the Bank is correct in arguing that Pusey's defamation claim accrued on August 13, 2013, her otherwise untimely defamation claim would nevertheless relate back to the First Complaint's filing date. *See* FED. R. CIV. P. 15(c)(2) (a claim asserted in an amended pleading will relate back to the original pleading date if it "arose out of the conduct, transaction or occurrence set out – or attempted to be set out – in the original pleading"). The gravamen of the First Complaint – notwithstanding the unskillful and oftentimes inarticulate pleadings compiled by Pusey's attorney – was that the Bank made false statements regarding Pusey's work abilities that subsequently interfered with her ability to find new employment. The Amended Complaint – in which Pusey first alleges that the false

"not-hirable" notation and "Risk Management" designation were shared with her prospective employers on a shared job application review software – simply crystallizes the allegations in the First Complaint. Accordingly, even if Pusey's defamation claim was untimely, the Court would allow relation back to the original filing date.[4] *See Pruiss v. Bosse*, 912 F. Supp. 104, 106 (S.D.N.Y. 1996) ("An amendment . . . can only make more specific what has already been alleged.").

**B.  Non-Defamation Tort Claims**

The Bank contends that Pusey's negligence and tortious interference with prospective business relations claims (the "non-defamation tort claims") should be dismissed because they are duplicative of her defamation claim. The Court agrees. New York courts have "kept a watchful eye for claims sounding in defamation that have been disguised as other causes of action." *Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 224 (S.D.N.Y. 2013). As such, "[u]nder New York law, tort claims are construed as defamation claims not just when they seek damages [] for injury to reputation, but also where the entire injury complained of flows from the effect on [a plaintiff's] reputation." *Chao v. Mount Sinai Hosp.*, No. 10-CV-2869, 2010 WL 5222118, at *11 (S.D.N.Y. Dec. 17, 2010).

---

[4] The Court notes that to the extent Pusey's defamation claim is based on her voluntary disclosure of the "not-hirable" notation during her Chase Bank interview, her claim necessarily fails because it is well-established that New York does not recognize defamation by self-publication. *See Phillip v. Sterling Home Care, Inc.*, 103 A.D.3d 786, 787, 959 N.Y.S.2d 546 (2d Dep't 2013) ("New York does not recognize defamation via compelled self-publication.").

Pusey's non-defamation tort claims seek compensation for damage to her professional reputation – specifically her inability to find new work – caused by the Bank's alleged publication of defamatory statements to her prospective employers through the shared job application software. These claims unequivocally sound in defamation. *See Trachtenberg v. Failedmessiah.com*, 43 F. Supp. 3d 198, 205 (E.D.N.Y. 2014) ("[T]he conduct plaintiff alleges – that defendant published a false article about her – falls well within the tort of defamation; therefore, defamation, and not negligence, is where plaintiff's claim appropriately lies."); *see also Lesesne*, 918 F. Supp. 2d at 226 ("[The] Complaint suggests only that there may have been some potential injury to [plaintiff's] professional reputation due to the filing of these complaints. This . . . is the basis for a claim [for] defamation, not tortious interference."). Therefore, Pusey's non-defamation tort claims are dismissed.[5] *See Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 731 (S.D.N.Y. 2014) (dismissing both tortious interference and intentional infliction of emotional distress claims as "duplicative" of a remaining defamation claim).

---

[5] For the first time in her opposition brief, Pusey asserts negligent infliction of emotion distress ("NIED") and Title VII claims. Even if the Court allowed Pusey to amend her complaint to add these claims, they would fail in any event. Pusey has not shown that she exhausted her Title VII administrative remedies. *See Deravin v. Kerik*, 335 F.3d 683, 686 (2d Cir. 2001) ("As a precondition to filing a Title VII claim in federal court, a plaintiff must first . . . file a timely complaint with the EEOC."). Pusey's NIED claim also fails because she has not alleged that her safety was threatened. *See Daluise v. Sottile*, 40 A.D.3d 801, 803, 837 N.Y.S.2d 175 (2d Dep't 2007) (holding that a NIED claim "must generally be premised upon a breach of a duty owed directly to the plaintiff which either unreasonably endangers a plaintiff's physical safety or causes the plaintiff to fear for his or her own safety").

## C. Permanent Injunction

Finally, the Bank maintains that Pusey's request for a permanent injunction should be dismissed because she has not stated an actionable claim. "[B]ecause an injunction is merely a remedy and not a cause of action, a cause of action must exist before injunctive relief may be granted." *Anghel v. New York State Dept. of Health*, 947 F. Supp. 2d 284, 298 (E.D.N.Y. 2013). Here, Pusey's defamation claim – the factual sufficiency of which the Bank has not challenged – survives the motion to dismiss. Because Pusey has a remaining substantive cause of action, it would be premature to dismiss her request for permanent injunctive relief.

## III.

For the preceding reasons, the Bank's motion is granted as to Pusey's non-defamation tort claims and denied as to Pusey's defamation claim and request for permanent injunctive relief.

**SO ORDERED.**

  /S/ Frederic Block  
FREDERIC BLOCK  
Senior United States District Judge

Brooklyn, New York  
July 13, 2015